UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM WOMACK,

                              Petitioner,

         v.

DONALD HOLBROOK,

                              Respondent.

No. C17-5822-BHS-TLF

REPORT AND RECOMMENDATION
Noted for: February 22, 2019

Petitioner William Womack was convicted by jury verdict of first degree rape of a child, first degree child molestation, intimidating a witness, and four counts of second degree rape of a child. Dkt. 11, Relevant State Court Record, Exhibit 1 ("Exhibit 1"). Womack raises 11 grounds for habeas corpus relief in his 28 U.S.C. § 2254 petition. He contends that he was denied the right to a fair trial and received ineffective assistance of counsel in violation of the Sixth Amendment, and that his sentence was grossly disproportionate in violation of the Eighth Amendment. Womack failed to exhaust his petition's other grounds in state court proceedings.

For the reasons discussed below, the undersigned recommends that the Court deny the petition and dismiss the action with prejudice and without an evidentiary hearing. The undersigned also recommends denying a certificate of appealability.

REPORT AND RECOMMENDATION - 1

**STATEMENT OF FACTS**

The Washington State Court of Appeals, Division II, summarized the facts of Womack's case, in relevant part:

> Womack lived with his girl friend Tamilynn Ashley, AW, his daughter from a prior marriage, and Ashley's two sons. He began sexually abusing AW when she was 8 years old, and the abuse continued regularly until she was 13. When AW tried to struggle free during this abuse, Womack would hold her down tightly so that she would be bruised. Eventually, she stopped trying to escape.
>
> AW eventually told her cousin, KV, that someone in her family was sexually molesting her, but she did not specify the abuser. Later, KV saw Womack tickling AW and yelled at him to get off his daughter. Womack reacted by asking AW if she had told KV and angrily assumed that KV knew of the abuse. AW later told KV that Womack had molested her.
>
> When she was 13, AW told Ashley "that [Womack] ... raped [her]" in an attempt to get someone to stop the abuse. Verbatim Report of Proceedings (VRP) (Nov. 17, 2011) at 478–79. Ashley confronted Womack about the allegation, who responded by saying, "It will stop. It won't happen again." VRP (Nov. 18, 2011) at 660. After Ashley's confrontation with Womack, his abuse of AW stopped for a few weeks.
>
> The night the abuse resumed, Womack had ordered AW to come into bed with him and Ashley. Womack ordered Ashley and AW to perform sex acts on him and then ordered them to have sex using Ashley's sex toy with his assistance. Then Womack raped AW twice. After that night, the abuse stopped.
>
> Ashley's relationship with Womack eventually ended. When she moved out, Ashley discovered that someone had removed the toy used to molest AW from the box she had packed it in. Ashley confronted Womack about the missing toy, and he replied that he had taken it, "smirk[ingly]" telling her that "'[he] might need it someday.'" VRP (Nov. 18, 2011) at 673. Womack later explained his reason for "need[ing]" the toy to AW, telling her that "if anything ever did come out in the open, he could threaten [Ashley] with" disclosing her involvement in the abuse by giving police the toy. VRP (Nov. 17, 2011) at 489; VRP (Nov. 18, 2011) at 673.
>
> After Ashley and Womack broke up, AW moved in with her grandparents. Womack, meanwhile, got married and became a long-haul truck driver frequently working out-of-state.
>
> On October 13, 2010 the State filed an information charging Womack with first degree child rape, first degree child molestation, and two counts of second degree child rape. In December 2010, after Womack was arrested in Illinois, Kelso Police Department Detective David Voelker flew to Illinois to return Womack to Washington.
>
> . . .

REPORT AND RECOMMENDATION - 2

While awaiting trial, Womack purchased a birthday card for Ashley from the jail commissary. The card contained a note telling Ashley that "if [she] want[ed] [mention of her involvement in AW's abuse] to stay out of the news media'" she would change her story. VRP (Nov. 18, 2011) at 691. Womack suggested that Ashley testify that AW made wild accusations "to make it seem improbable that he had ever done anything to [AW]." VRP (Nov. 18, 2011) at 691; Ex. 59. Among these, Womack suggested that Ashley testify that AW had claimed that her grandparents, an officer of the Kelso Police Department, Mickey Mouse, and Elvis had all molested her. Ex. 59. Womack hinted that if Ashley did not change her story, he would reveal incriminating evidence about her.

On August 18, 2011, Womack appeared in court and immediately moved to discharge his appointed attorney. Womack emphasized that he wanted a trial as soon as possible and he viewed discharging his attorney as a means to make that happen. The trial court then engaged in a lengthy colloquy with Womack concerning the nature of the charges against him; the maximum sentence he could receive; and the disadvantages of representing himself, including the fact that the court would hold him to the standards it would apply to an attorney, his unfamiliarity with the rules of evidence and procedure, and the awkwardness that would ensue when he took the stand to offer his version of events.

When the trial court asked Womack if he still wanted to represent himself, Womack asked if he could have a different appointed counsel. The trial court initially deferred Womack's question, but the State expressed concern that Womack's request made his waiver of his right to counsel equivocal. The trial court, therefore, returned to Womack's request and asked Womack if he would continue to trial with representation if he received different appointed counsel. Womack initially appeared receptive to this idea, but ultimately rejected it. The trial court finally asked him, "Okay. And [explain] why you wouldn't want to have a licensed attorney help you [with the trial], recognizing that's a significant penalty, if convicted?" VRP (Aug. 18, 2011) at 45. Womack replied, "I guess my best answer was the only person I really trust at this point is myself." VRP (Aug. 18, 2011) at 45. The trial court concluded that Womack knowingly, voluntarily, and intelligently waived his right to counsel and allowed him to proceed pro se, although the trial court appointed his counsel as standby counsel.

The trial court and the parties then turned to the mechanics of getting the matter to trial. Womack stated that he had not seen discovery in months and expressed concern about preparing for trial, which was set to begin in four days. The State moved to continue trial for three reasons. First, the State expressed concerns about its ability to redact the discovery given to Womack, as required by court rule, in time for a trial on August 22. The State asked for a protective order related to the discovery, which the trial court agreed to hear at a later date. Second, because Womack's counsel had told the State he would move for a continuance, the State allowed witnesses to schedule vacations during the dates set for trial. Finally, the State expressed concern about Womack's ability to prepare for trial and claimed that his decision to proceed pro se might constitute substitution of counsel, which would extend Womack's time for trial deadline.

REPORT AND RECOMMENDATION - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Womack objected, noting that his case had been continued numerous times and stating that he wanted trial to take place on August 22. The trial court found good cause to continue the trial to allow the State to redact the discovery and to allow Womack to prepare his defense.

At the end of the August 18, 2011 hearing, Womack asked how to file a motion to dismiss for violation of the time for trial rule. The court informed Womack that he needed to make the motion in writing and note the matter for a hearing. The court then informed Womack that his time for trial had not yet expired and that the continuance it had just granted would extend the expiration date again.

. . .

At trial, AW testified that Womack abused her. Ashley testified that Womack told her that he would stop abusing AW when Ashley confronted him about it; she also testified that she and Womack sexually abused AW on one occasion. [Court of Appeals footnote 5: Ashley also discussed losing her job after the disclosure of her involvement in AW's abuse and her decision to plead guilty to criminal charges requiring her to serve jail time and register as a sex offender.] Ashley also recounted receiving the birthday card with the note telling her to falsify her story under threat of Womack giving the sex toy to police. KV and her mother took the stand and described how AW told them of the abuse and their observations of Womack as a controlling and overprotective parent with AW. KV testified specifically about the incident where she yelled at Womack to get off of AW and his reaction to her demand.

Womack took the stand in his own defense. He denied ever sexually abusing AW and explained that she had made up everything because she resented his strict policy against her dating boys at a young age. Womack also stated that, although he had never sexually abused AW, he had caught Ashley having sex with her. When asked about the threatening note to Ashley, Womack explained that he had sent the letter as a "ruse" to "shake [Ashley] up and get the truth out." VRP (Nov. 22, 2011) at 1180.

The jury convicted Womack on all counts and found the offenses were crimes of domestic violence because Womack, AW, and Ashley all shared a household. The jury also found that two factors aggravated the child rape and child molestation offenses. First, the jury found that AW was a particularly vulnerable victim. Second, the jury found that the offenses consisted of a pattern of sexual abuse against a victim younger than 18. Given the convictions and aggravating factors, the trial court imposed an exceptional sentence of 819 months to life incarceration.

Exhibit 2, Opinion, Court of Appeals Cause No. 42999-3-II, *2-8; see also State v. Womack, 2014 WL 5363735, noted at 184 Wash. App. 1011 (2014) (unpublished).

REPORT AND RECOMMENDATION - 4

State Court Procedural History

Womack appealed his convictions and exceptional sentences to the Washington Court of Appeals. Exhibits 3-5. The Washington Court of Appeals affirmed the convictions and sentence. Exhibit 2.

Womack sought review by the Washington Supreme Court. Exhibits 6, 7. The Washington Supreme Court denied review on March 4, 2015. Exhibit 8. The Washington Court of Appeals issued its mandate on April 21, 2015. Exhibit 9.

Womack then filed a personal restraint petition (PRP) in the Washington Court of Appeals. Exhibits 10-14. The Washington Court of Appeals denied the PRP. Exhibit 15, Unpublished Order, Court of Appeals Cause No. 48594-0-II.

Womack sought review by the Washington Supreme Court. Exhibit 16. The Commissioner of the Washington Supreme Court denied review. Exhibit 17. Womack moved to modify the Commissioner's ruling. Exhibit 18. The Supreme Court denied the motion to modify on October 4, 2017. Exhibit 19.

Womack filed his petition for writ of habeas corpus on October 26, 2017. Dkt. 4. Womack alleges 11 grounds for habeas relief:

A. I was denied a fair trial with due process due to an egregious amount of prosecutorial misconduct during my trial.

B. I was denied a fair trial by an impartial jury and put in double jeopardy due to wrongful dismissal of entire panel and denied for cause challenges.

C. My sentence was clearly excessive and not proportional to other similar cases in and outside of Cowlitz County's jurisdiction.

D. My conviction was based on perjured or false testimony and the State failed to correct he false or perjured statements.

E. I was denied a fair trial with due process when the trial court denied me to

REPORT AND RECOMMENDATION - 5

1    allow my private investigator to testify.

2    F.  I was denied a fair trial with due process when the trial court erroneously
3        allowed evidence of an unauthenticated email and denied me to present
         relevant video evidence.

4
5    G.  I was denied a speedy trial guaranteed by the Sixth Amendment.

6    H.  My Fifth and Sixth Amendment Miranda rights were violated and the
         detective testifying to witnesses' statements that were known to be testifying
7        was improper and prejudicial.

8    I.  I was denied access to the basic necessary legal tools to adequately and timely
9        try my case.

10   J.  I was denied a fair trial with due process when the State failed to preserve
         evidence and received and used illegal evidence.
11

12   K.  I was denied effective assistance of counsel/standby counsel and appellate
         counsel.
13   Dkt. 4, pp. 4-12.

14
15                      **EXHAUSTION OF STATE COURT REMEDIES**

16          The Court should find that Womack failed to exhaust grounds B, E, F, G, H, I, and J, and
17   part of claim A, and that these claims are now procedurally defaulted.

18          Exhaustion of state court remedies is a prerequisite to granting a petition for writ of
19   habeas corpus. 28 U.S.C. § 2254(b)(1). A petitioner must present a claim in "each appropriate
20   state court"—that is, at each level of state review—to alert the state "to the federal nature of the
21   claim" and give it the "opportunity to pass upon and correct" alleged violations of the petitioner's
22   federal rights. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations and internal quotation marks
23   omitted).
24
25          A petition can satisfy the exhaustion requirement by providing the highest state court
26   with a fair and full opportunity to consider all claims before presenting them to the federal court.

REPORT AND RECOMMENDATION - 6

*Picard v. Connor*, 404 U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985). A petitioner "fairly and fully" presents a federal claim to the state courts by presenting it "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted). The petitioner "must alert the state courts to the fact that he is asserting a federal claim." *Id.* It is not enough that all of the facts necessary to support the federal claim were before the state courts, or that the petitioner made a somewhat similar state-law claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (citing *Picard*, 404 U.S. at 270; *Anderson v. Harless*, 459 U.S. 4 (1982)). The petitioner must make the federal basis of the claim "explicit" in the state appeal or petition, "either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law." *Insyxiengmay*, 403 F.3d at 668; *Baldwin*, 541 U.S. at 33.

A petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 31–32 (2004); *Murray v. Schriro*, 882 F.3d 778, 807 (9th Cir. 2018).

In some circumstances, incorporation by reference of a prior court document may satisfy the exhaustion requirement. The Ninth Circuit held in *Insyxiengmay v. Morgan* that a petitioner exhausted certain claims where his motion for discretionary review in the state supreme court included, as an attachment, a state petition that asserted the claims. 403 F.3d 657, 668-69 (9th Cir. 2005). The court observed that Washington law only prohibited incorporation by reference of documents that had not been filed with the state appellate court at all. *Id.*; *see also Scott v. Schriro*, 567 F.3d 573, 582–83 (9th Cir. 2009) (inclusion of ineffective assistance of counsel

REPORT AND RECOMMENDATION - 7

claims in the appendix to state petition for review satisfied the exhaustion requirement).

This Court has applied *Insyxiengmay* to reach the merits of certain claims "out of an abundance of caution," rather than finding them exhausted, where the petitioner's motion for review to the state supreme court included, as an attachment, the lower court's decision addressing those claims. *See Robinson v. Frakes*, No. 11-5302 RJB/KLS, 2011 WL 4945937, *2 (W.D. Wash. 2011) (unpublished). Similarly, this Court has found that a petitioner exhausted certain grounds for relief where he "attached a full copy of his third amended personal restraint petition and supplemental petition [both arguing in support of those grounds] to his motion for discretionary review." *Silva v. Holbrook*, No. C16-0378-JCC-MAT, 2016 WL 8235139, *6 (W.D. Wash. Nov. 2, 2016), *report and recommendation adopted*, No. C16-0378-JCC, 2017 WL 568822 (W.D. Wash. Feb. 13, 2017). This Court has found that a petitioner exhausts arguments that the petitioner included in briefs that the petitioner then attached to petitions for review in the state high-court. Washington courts have not articulated a rule as broad as the State asserts—that Washington courts "refuse to review issues where the argument is solely incorporated by reference," Dkt. 17, p. 9; *see Insyxiengmay*, 403 F.3d at 668–69 (holding that *State v. Kalakosky*, 121 Wn.2d 525, 852 P.2d 1064, 1072 n.18 (1993), and similar cases "prohibit incorporation of material that has not been filed with the court itself").

Here, the Court directed the parties to submit supplemental briefing on exhaustion. The State asserts that Womack failed to exhaust grounds B, E, F, G, H, I, and J. Dkt. 17, p. 7. Womack responds that he exhausted each of these claims by raising them in his statement of addition grounds for relief (SAGR) on direct appeal of his conviction, and by subsequently referring to the SAGR in seeking review in the Supreme Court of Washington on both direct appeal and collateral review. *See* Exhibit 5 (SAGR); Exhibit 6 (Petition for Review of affirmance

REPORT AND RECOMMENDATION - 8

on direct appeal); Exhibit 16 (Motion for Discretionary Review of PRP denial).

The Court should find that the State is correct because, unlike the petitioner in *Insyxiengmay*, Womack did not fairly and fully present several of his claims to the Washington Supreme Court.

Womack's first presentation of claims to the Washington Supreme Court was in his petition for review on direct appeal. In that petition, Womack sought "review of each and every part of the unpublished decision of the Court of Appeals." Exhibit 6, p. 4. That unpublished decision had addressed the issues raised in the statement of additional grounds for review (SAGR). Exhibit 6, Attachment 1. But other than this summary reference to the Court of Appeals decision, Womack did not raise those SAGR issues, including habeas grounds B, E, F, G, H, I, and J and part of claim A. Instead, the only issues Womack fairly presented to the Supreme Court were challenges to the trial court's decisions to grant Womack's request to represent himself and to grant a motion to continue by the State. Exhibit 6, p. 4; *see also* Exhibit 7 (seeking to supplement record with corrected facts).

Womack's other presentation of claims to the Washington Supreme Court was in collateral proceedings, in a motion for discretionary review after the Court of Appeals denied his PRP. That motion summarily referred to the 38 claims previously raised in his SAGR, and raised only those 38 claims. Exhibit 16, p. 3. Womack attached only the Court of Appeals order dismissing his petition. Exhibit 16, Attachment 1. That order did not address the merits of any of the SAGR claims. *Id.* Like his petition on direct appeal, Womack's motion for discretionary review would not satisfy even the most permissive interpretation of "full and fair presentation" with respect to the 38 SAGR claims, including habeas grounds B, E, F, G, H, I, and J. *See Robinson*, 2011 WL 4945937, *2.

REPORT AND RECOMMENDATION - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In short, Womack's submissions to the Washington Supreme Court did not "fairly and fully" present his 38 SAGR claims to that court "by providing the proper factual and legal basis for the claim[s]." *Insyxiengmay*, 403 F.3d at 668; *see* Exhibits 6, 16. Because Womack did not fairly and fully present claims B, E, F, G, H, I, and J at every level of state review, he did not exhaust those claims for habeas review. *Picard*, 404 U.S. at 276. In addition, as part of claim A, Womack raises a Confrontation Clause challenge to the trial court's admission of certain testimony. Dkt. 5, p. 20. Womack did not fairly and fully present that claim to the Washington Supreme Court, either. *See* Exhibits 6, 16.

Womack's unexhausted claims are also procedurally defaulted. The procedural default rule bars a federal court from considering a federal claim when it is clear that the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear that the state court would hold the claim procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002). If a state procedural rule would now preclude a petitioner from raising a claim at the state level, the claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Here, Womack filed with the Washington Supreme Court a petition for review on direct appeal and a motion for discretionary review in collateral proceedings. Exhibits 6, 16. As noted above, these filings did not give the Supreme Court a full opportunity to review claims B, E, F, G, H, I, and J, and part of claim A, for legal error. Womack's judgment and sentence became final in 2012. Exhibit 1. In Washington, a petitioner can only file a personal restraint petition within one year of sentence finalization. RCW 10.73.090. Because Womack did not exhaust his remedies with his initial personal restraint petition and the one-year statute of limitations has expired for a second petition, Womack can no longer present his unexhausted claims to the

REPORT AND RECOMMENDATION - 10

Washington Supreme Court. There are few exceptions to this 1-year statute of limitations under state law, and the petitioner has not argued or suggested there is any evidence that an exception would apply. *Cf. In re Stockwell,* 179 Wn.2d 588, 593-94 (2014) (petitioner sought relief from a guilty plea that was entered before RCW 10.73.090 was in effect, and the posting of a notice by the Department of Corrections was not sufficient to inform the petitioner of the 1-year time frame imposed by the new statute). Those claims are procedurally barred under state law and he is now precluded from exhausting them.

This Court will only hear the merits of a procedurally defaulted claim if the petitioner can show "cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012). A petitioner can show cause by demonstrating that "some objective factor external to the defense impeded [petitioner]'s efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Womack has not shown that some objective factor impeded his efforts to comply with state procedure and appeal these claims to the state supreme court. Therefore, Womack's unexhausted claims are procedurally barred. *See Martinez*, 566 U.S. at 10.

Because of this procedural bar, the remedies normally associated with a mixed petition are inappropriate. The Court will normally dismiss a mixed petition containing both exhausted and unexhausted claims without prejudice. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Alternately, the Court can stay the petition "while the petitioner returns to state court to exhaust his previously unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). But the Court considers these remedies only when a state court has not yet had the opportunity to examine a petitioner's claims. *Franklin*, 290 F.3d at 1231.

Here, dismissing the petition without prejudice would be futile because Womack no

REPORT AND RECOMMENDATION - 11

1    longer has the option of exhausting his claims in state court before returning to federal court. *See*

2    *Franklin*, 290 F.3d at 1231. For the same reason, staying the proceeding would serve no purpose.

3    Accordingly, in the interest of judicial economy, this Court should decline to dismiss the petition

4    or stay the proceeding and instead dismiss those unexhausted claims with prejudice, while

5    addressing the exhausted claims on the merits.

6

7                                    **EVIDENTIARY HEARING**

8         In Womack's reply brief, he asks for a hearing on new evidence relevant to his habeas

9    petition. Dkt. 26, p. 10. Even if this request has been properly raised, the Court should deny it.

10        This Court has discretion as to whether to hold a hearing. *Schriro v. Landrigan*, 550 U.S.

11   465, 473 (2007). It "must consider whether such a hearing could enable an applicant to prove the

12   petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."

13   *Id.* at 474. A hearing is not required if the allegations would not entitle petitioner to relief under

14   28 U.S.C. § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the

15   applicant's factual allegations or otherwise precludes habeas relief, a district court is not required

16   to hold an evidentiary hearing." *Id.*; *see also Cullen v. Pinholster*, 563 U.S. 170, 171 (2011).

17

18        Here, there are no factual issues that could not have been previously discovered by due

19   diligence. And the facts underlying Womack's claims are sufficient to establish that a rational

20   fact finder would have found him guilty of the crime. Therefore, the Court should conclude that

21   an evidentiary hearing is not necessary to decide this case and Womack's claims may be

22   resolved on the existing state record.

23

24

25

26

REPORT AND RECOMMENDATION - 12

## STANDARD OF REVIEW

A federal court may grant a habeas corpus petition with respect to any claim that was adjudicated on the merits in state court only if the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

A state court ruling is contrary to clearly established federal law if the state court either arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. To be an unreasonable application of Supreme Court precedent, the state court's decision must be "more than incorrect or erroneous." *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005). Rather, it must be objectively unreasonable. *Lockyear v. Andrade*, 538 U.S. 63, 69 (2003).

In determining whether a state court decision was based on an unreasonable determination of the facts in light of the evidence, a federal habeas court must presume that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). A federal court may not overturn state court findings of fact "absent clear and convincing evidence" that they are "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). When applying these standards, a federal habeas court reviews the "last reasoned decision by a state court." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

Here, for most of the grounds Womack raises, the "last reasoned decision" is the opinion by the Washington Court of Appeals, Division II, on direct appeal. *See* Exhibit 2, pp. 2-8. In its ruling denying discretionary review of Womack's personal restraint petition, Supreme Court of the State of Washington addressed three of those grounds on the merits. Exhibit 17; *see also* Exhibit 15 (Washington Court of Appeals, Division II, addressed same three grounds). With respect to those issues—exceptional sentencing, perjured testimony, and ineffective assistance of counsel—the Washington Supreme Court's PRP ruling was the "last reasoned decision." *See Ignacio*, 360 F.3d at 1055.

**DISCUSSION**

1.    Denial of Fair Trial due to Prosecutorial Misconduct (Claim A)

Womack first asserts that prosecutorial misconduct rendered his trial fundamentally unfair, violating his Sixth Amendment right to a fair trial.

Reviewing courts must evaluate the impact of a prosecutor's potentially prejudicial misconduct in the context of the entire trial. *Hovey v. Ayers*, 458 F.3d 892, 922 (9th Cir. 2006) (*citing Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). A reviewing court asks whether the prosecutor's comments or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam) (holding that *Darden* standard is "clearly established Federal law" under 28 U.S.C. § 2254(d)).

In considering this question, the court must examine the entire proceedings and place the prosecutor's statements in context. *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987). A prosecutor has wide latitude in closing argument to make reasonable inferences based on the evidence. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991). A trial error is presumed

REPORT AND RECOMMENDATION - 14

1   to be harmless unless it had a "substantial or injurious effect or influence in determining the

2   jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The petitioner bears the burden

3   to state facts that point to a real possibility of constitutional error regarding prosecutorial

4   misconduct. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

5           It is not the province of federal habeas courts to re-examine state court conclusions

6   regarding matters of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Jeffries v. Blodgett*, 5

7   F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994). Federal habeas relief does

8   not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*,

9

10  465 U.S. 37, 41 (1984)).

11          Womack alleges several instances of prosecutorial misconduct before and during his trial.

12  He asserts that this misconduct, in aggregate, violated his Sixth Amendment right to a fair trial.

13  On direct appeal, the state appellate court rejected Womack's prosecutorial misconduct

14  arguments on state-law grounds. Even if Womack's petition raises an issue of federal law as to

15  these claims, Womack has not shown he is entitled to habeas relief.

16

17          A.      Hearsay Evidence

18          First, Womack contends that the prosecutor knowingly introduced inadmissible hearsay

19  evidence. He asserts that the prosecutor improperly referred to hearsay in her opening statement

20  and intentionally solicited hearsay evidence during trial. Dkt. 5, pp. 19-21. Womack states that

21  he objected to the statements in a motion in limine before trial. Dkt. 5, p. 19. He also points out

22  that the State referred to "an alleged confession made by Mr. Womack" in its opening and

23  closing statements, in addition to eliciting that statement—which Womack contends is hearsay—

24  at trial.

25

26

REPORT AND RECOMMENDATION - 15

The state appellate court rejected Womack's arguments on state-law grounds. Exhibit 2, pp. 36-38. The court held that the victim's mother's testimony about Womack's statements were party admissions and therefore not hearsay. *Id.* It found that the trial court sustained objections to improper questioning by the prosecutor and gave proper curative instructions to the jury. *Id.* And it held that Womack failed to preserve his objections to the remaining alleged hearsay by failing to object at trial. *Id.*

Womack has not shown he is entitled to habeas relief based on his claim that the prosecutor committed misconduct in introducing hearsay evidence at trial.

Womack asks this Court to review the state court's evidentiary rulings that several of the challenged statements were not hearsay because they involved party admissions, Washington Rule of Evidence (ER) 801(d)(2), and that certain statements did not prejudice Womack because the trial court excluded them based on Womack's objections and gave the jury a curative instruction. These applications of state law regarding admissibility of evidence are not reviewable in a federal habeas corpus proceeding. *See McGuire*, 502 U.S. at 68.

Womack also asks the Court to review the Court of Appeals' holding that Womack failed to preserve his other challenges based on hearsay evidence because he did not object at trial. *See* Exhibit 2, pp. 36-38.

Where a state court has denied federal claims "based on an adequate and independent state procedural rule," those claims are procedurally defaulted and the federal habeas court may not review them. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Exceptions exist when the petitioner can show cause for the default and actual prejudice from the alleged violation of federal law, or if the petitioner can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). For a

REPORT AND RECOMMENDATION - 16

claim to be procedurally defaulted, the last reasoned state court opinion must clearly and expressly state that its judgment rests on a state procedural bar. *See Harris v. Reed*, 489 U.S. 255, 263 (1989). Procedural default may occur if the petitioner fails to comply with a state procedural rule that required him to have objected contemporaneously to preserve an issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *see also Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011) (holding that petitioner procedurally defaulted on prosecutorial misconduct claim where state appellate court found petitioner waived issue by failing to object to improper remarks at trial).

Even if Womack raises a cognizable federal claim that he was denied a constitutionally fair trial when the prosecutor introduced hearsay evidence, the Court of Appeals' determination that Womack had not preserved objections to the various alleged instances of hearsay was an independent and adequate state ground for denying those claims, and the court explicitly relied on this basis. *See* Exhibit 2, p. 37 (citing *State v. Strine*, 176 Wn.2d 742, 748 (2013)); *see also State v. Boast*, 87 Wn.2d 447, 451 (1976) (holding that "an objection which does not specify the particular ground upon which it is based is insufficient to preserve the question for appellate review"). Accordingly, Womack's due process/hearsay claim is barred by the procedural default doctrine.

Womack asserts that he preserved such objections during an untranscribed hearing (Dkt. 26, p. 15) and "it was unreasonable for the COA to determine" that he failed to object to certain hearsay at trial.[1] *Id.* The Court of Appeals' statement about Womack's failure to object was a finding of fact. This Court cannot reject a state court's factual finding "absent clear and

---

[1] Womack's motion seeking to obtain those transcripts in this habeas proceeding, Dkt. 30, is addressed in a separate order.

REPORT AND RECOMMENDATION - 17

convincing evidence" that it was "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S.

322, 340 (2003). Womack has not made such a showing here. Nor should the Court allow

petitioner to expand the record; he cannot satisfy the requirements of 28 U.S.C. § 2254(d)(1).

*Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Accordingly, this Court must defer to the

state court's holding, applying state law, that Womack failed to preserve his hearsay claims. *See*

*McGuire*, 502 U.S. at 68.

In challenging the state court's admission of alleged hearsay, Womack also asserts that

the trial court violated his Sixth Amendment right to confront witnesses against him. Dkt. 5, p.

20. As noted above, Womack did not present this federal claim to the Washington Supreme

Court and therefore has not exhausted it. *See Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th

Cir. 2005).

B.      Misstatements of Law, Prejudicial Remarks, and Improper Vouching During
        Argument

Womack further asserts that the prosecutor committed misconduct in numerous

statements she made during opening, closing, and rebuttal arguments. Womack asserts that the

prosecutor repeatedly misstated the law during her closing argument. He asserts that the

prosecutor made remarks during both opening and closing argument that were unfairly

prejudicial to him. And he asserts that the prosecutor's closing argument improperly vouched for

witnesses' trial testimony by: telling the jury that some elements and aggravating circumstances

(e.g., that Womack, his daughter, and his partner were members of the same household) are

"easy" to find and some could be an "automatic yes;" implying her belief in the State's version

of certain facts; and stating that the victim "did very well" with dates in her testimony. Dkt. 5,

pp. 23-24; *see* Exhibit 29, pp. 1223-57, 1279-86.

REPORT AND RECOMMENDATION - 18

The Court of Appeals considered these claims together and rejected them without reaching their merits. Exhibit 2, pp. 29-30. The court stated:

> Turning to Womack's claims about the State's opening statement, rebuttal, and closing arguments, we note that Womack failed to object to all but two of the arguments he claims constituted misconduct. Even if we assumed that each statement to which Womack now objects was improper, his failure to object indicates that none of these arguments appeared prejudicial when made. *State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990). More importantly, he has not met his burden of showing that no curative instruction would have obviated any prejudice. He has not preserved his challenges to the remarks to which he did not object.
>
> As to the two instances where Womack objected, the trial court offered a curative instruction, and we presume the jury followed these instructions, curing any error. *Swan*, 114 Wn.2d at 661–62.

Exhibit 2, p. 30.

The procedural default doctrine also prevents this Court from revisiting the state court's decision to reject Womack's claims on procedural grounds. *See Frady*, 456 U.S. at 167-69.

Under Washington law, a defendant's failure to object to a prosecutor's misconduct is an independent procedural bar to consideration of the issue on appeal, unless the conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Swan*, 114 Wn.2d 613, 661 (1990); *State v. Emery*, 174 Wn.2d 741, 760-61 (2012).

Here, the Court of Appeals applied state procedural rules to find that, with respect to all but two allegedly prejudicial remarks, Womack failed to preserve his challenge. Exhibit 2, p. 30. With respect to the other two remarks, the Court of Appeals held that the trial court cured any error with a jury instruction. *Id.* Womack's prosecutorial misconduct claims are procedurally defaulted for purposes of federal habeas review unless Womack can show cause and prejudice or actual innocence to excuse his procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Rich v. Calderon*, 187 F.3d 1064, 1070 (9th Cir. 1999) (applying procedural

REPORT AND RECOMMENDATION - 19

1    default where claim was barred under California law because defendant failed to object at trial to

2    prosecutor's comments).

3              Womack has not done so. *See* Dkt. 5, 26. Womack asserts that he attempted to raise

4    objections during pretrial hearings. Dkt. 26, p. 15. He states that he did not want to object in

5    front of the jury. *Id.* This is not good cause for a failure to object.

6              To satisfy the "cause" prong, Womack must show that "some objective factor external to

7    the defense" prevented him from complying with the state's procedural rule. *Murray v. Carrier*,

8    477 U.S. 478, 488 (1986). Such factors include "interference by officials" that made compliance

9    with the procedural rule impracticable, or "a showing that the factual or legal basis" for the

10   claims "was not reasonably available." *Id.* at 493-94 (internal quotation marks omitted).

11   Ineffective assistance of counsel may also constitute cause, but attorney error short of that will

12   not excuse procedural default. *Id.* at 494. The petitioner's pro se status or lacking in knowledge

13   of the law is also insufficient to satisfy the cause prong. *See Hughes v. Idaho State Board of*

14   *Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).

15             Once a petitioner establishes cause, he must show "actual prejudice" from the alleged

16   errors. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Alternatively, a habeas corpus petition may

17   be granted without a showing of cause in those "extraordinary instances when a constitutional

18   violation probably has caused the conviction of one innocent of the crime." *Id.*

19             Here, Womack makes no showing that an objective factor external to his defense

20   prevented him from complying with Washington's rule requiring contemporaneous evidentiary

21   objections. Because he "cannot establish any reason, external to him, to excuse his procedural

22   default," this Court need not address the issue of actual prejudice. *Boyd v. Thompson*, 147 F.3d

23   1124, 1127 (9th Cir. 1998). And although Womack asserts that he is actually innocent, he has not

REPORT AND RECOMMENDATION - 20

1   shown that his innocence is "probable." He instead relies on bare assertions that the witnesses

2   against him were lying. *See* Dkt. 5, p. 85; *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995)

3   (explaining petitioner's burden in proving claim of innocence to surmount procedural-default

4   bar). This is not the kind of extraordinary instance where the petition should be granted despite

5   the absence of a showing of cause. *McCleskey*, 499 U.S. at 494.

6       Accordingly, the procedural-default doctrine bars this Court from considering Womack's

7   claims on habeas review.

8

9   2.    Grossly Disproportionate Sentence (Claim C)

10      Womack also asserts that his sentence was grossly disproportionate. Based on two

11  aggravating factors that the jury found in special verdicts—that the victim was particularly

12  vulnerable and that the offenses consisted of a pattern of sexual abuse against a victim younger

13  than 18—the trial court imposed an exceptional sentence of 819 months to life incarceration.

14  Exhibit 1.

15      The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S.

16  Const. amend. VIII; *Robinson v. California*, 370 U.S. 660, 666 (1962) (Eighth Amendment is

17  applicable to states by way of Fourteenth Amendment). Although the constitutional principle of

18  proportionality between crime and sentence applies to noncapital sentences, "[t]he Eighth

19  Amendment does not require strict proportionality. . . . Rather, it forbids only extreme sentences

20  that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003)

21  (citation omitted).

22      To determine whether a sentence is grossly disproportionate, a court must first compare

23  "the gravity of the offense and the severity of the sentence." *Graham v. Florida*, 560 U.S. 48, 60

REPORT AND RECOMMENDATION - 21

(2010). Only "'in the rare case in which [this] threshold comparison . . . leads to an inference of

gross disproportionality,'" the court should then compare the defendant's sentence with the

sentences received by other offenders in the same jurisdiction and with the sentences imposed for

the same crime in other jurisdictions. *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001

(1991)). The gross disproportionality principle applies "only in the 'exceedingly rare' and

'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation omitted).

 In denying review of Womack's personal restraint petition, the state Supreme Court

rejected Womack's argument that his sentence violated state law and the Eighth Amendment

(see Exhibit 16, p. 7):

> Mr. Womack next contends that his exceptional sentence of 819 months to life is
> clearly excessive. The length of an exceptional sentence is reviewed only for
> abuse of discretion. *State v. Armstrong,* 106 Wn.2d 547, 551-52, 723 P.2d 1111
> (1986). An exceptional sentence is clearly excessive if, in light of the record, it
> "shocks the conscience." *State v. Ritchie,* 126 Wn.2d 388, 396, 894 P .2d 1308
> (1995) (internal quote marks omitted). In Mr. Womack's case, the jury returned
> special verdict findings that (1) the victim was particularly vulnerable, and (2)
> that the crimes consisted of a pattern of sexual abuse against a victim younger
> than 18 years of age. The victim was Mr. Womack's daughter. He raped and
> molested her for approximately five years. The evidence plainly supported the
> aggravating factors found by the jury. The court did not abuse its discretion in
> finding that the special verdict findings supported imposition of an exceptional
> sentence. And the exceptional sentence imposed does not "shock the conscience"
> in light of the record.

Exhibit 17, p. 3.

 This is not an "exceedingly rare" case in which a comparison of "the gravity of the

offense and the severity of the sentence" leads to an inference of gross proportionality. *See*

*Graham*, 560 U.S. at 60; *Lockyer*, 538 U.S. at 73. Womack was found guilty of molesting and

raping his minor daughter over the course of five years. The trial court calculated Womack's

offender score and sentenced him in accordance with state sentencing statutes. *See* Exhibit 2, p.

REPORT AND RECOMMENDATION - 22

42; Exhibit 17, p. 3; RCW 9.94A.525(17), RCW 9.94A.589(1)(a). The state courts of appeals

upheld the sentence under state law. Exhibit 2, p. 14; Exhibit 15, p. 2; Exhibit 17, p. 3. The

sentence of 819 months was not "extreme" or "grossly disproportionate" to the abhorrent crimes

that Womack was convicted of committing. *See Ewing*, 538 U.S. at 23.

Accordingly, the Washington Supreme Court's rejection of Womack's Eighth

Amendment claim was not contrary to or an unreasonable application of clearly established

federal law.

3.     Denial of Fair Trial due to Perjured or False Trial Testimony (Claim D)

Next, Womack asserts that he was denied a fair trial by the state's introduction of

perjured testimony.

A prosecutor's knowing use of false or perjured testimony against a defendant to obtain a

conviction may violate due process. *Napue v. Illinois*, 360 U.S. 264, 269. To prevail on a *Napue*

claim, the petitioner must show that "'(1) the testimony (or evidence) was actually false, (2) the

prosecution knew or should have known that the testimony was actually false, and (3) . . . the

false testimony was material.'" *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (quoting

*United States v. ZunoArce*, 339 F.3d 886, 889 (9th Cir. 2003)). Materiality depends on whether

"'there is any reasonable likelihood that the false testimony could have affected the judgment of

the jury.'" *United States v. Bagley*, 473 U.S. 667, 678 (1985) (quoting *United States v. Agurs*,

427 U.S. 97, 103 (1976)).

In denying review of Womack's personal restraint petition, the state Supreme Court

rejected his claim that the State relied on perjured testimony:

> Mr. Womack first claims that the State relied on perjured testimony, pointing to
> apparent inconsistencies between witness statements to police and trial testimony.

REPORT AND RECOMMENDATION - 23

*See Napue v. People of State of Ill.*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) (improper for a prosecutor to knowingly solicit or fail to correct false evidence). But Mr. Womack fails to present any evidence of actual perjury in the form of knowingly false statements, or show that the State was aware of but did not correct false statements. *See Rice*, 118 Wn.2d at 886 (personal restraint petitioner must support factual allegations with admissible evidence). At most Mr. Womack shows the type of inconsistencies common in trial testimony. It is not enough for Mr. Womack to merely imply that anyone who disagrees with his version of events is committing perjury. And to the extent Mr. Womack is challenging the sufficiency of the evidence, an appellate court will not reweigh the evidence or second guess the jury's credibility determinations. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004); *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Exhibit 17, pp. 2-3.

Womack recounts a number of inconsistencies in testimony by the main witnesses, the victim and Womack's former partner, Ms. Ashley, who separately pleaded guilty to abusing the victim. Dkt. 5, pp. 42-47; Exhibit 2, p. 8 & n.5. But he has not shown that these witnesses engaged in perjury or that the prosecutor called them to elicit perjured testimony or for any other improper purpose. Therefore, Womack has shown neither that the prosecutor's actions so infected the trial as to amount to a violation of due process, nor that the witnesses' testimony was improper or created a substantial and injurious effect on the jury. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The state court did not unreasonably apply federal law when it came to the same conclusions.

4.       Ineffective Assistance of Counsel (Claim K)

Womack's final exhausted claims are ineffective assistance of counsel at trial and on direct appeal.

REPORT AND RECOMMENDATION - 24

A.    <u>Trial Counsel</u>

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). To show that this right was denied, a defendant must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To satisfy the first of these prongs, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Courts apply a "strong presumption" that the performance of counsel "falls within the wide range of reasonable professional assistance." *Id.* at 689. Counsel has "wide latitude in deciding how best to represent a criminal defendant" and "in making tactical decisions." *Id.* at 688-89. Courts evaluate "[t]he reasonableness of counsel's performance . . . from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 384 (1986).

Under the second prong, the defendant must "affirmatively prove prejudice" in the form of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94. In weighing prejudice, a reviewing court "must consider the totality of the evidence before the judge or jury." *Id.* at 695. Because the petitioner must satisfy both prongs of *Strickland*, a court need not address both prongs if the petitioner makes an insufficient showing of one prong. *Id.* at 697.

The primary question when reviewing a claim of ineffective assistance of counsel under the Antiterrorism and Effective Death Penalty Act (AEDPA) is not whether counsel's representation was deficient or the state court erred in its analysis, but whether the state court adjudication *itself* was unreasonable. *Yarborough*, 540 U.S. at 5. This Court's review of

REPORT AND RECOMMENDATION - 25

1  counsel's representation is "doubly deferential when it is conducted through the lens of federal

2  habeas." *Id.* at 5-6.

3      In denying review of Womack's personal restraint petition, the Washington Supreme

4  Court rejected Womack's argument that his trial counsel was ineffective:

> Mr. Womack asserts that his initially appointed counsel (before Mr. Womack
> elected to proceed pro se) was ineffective because his caseload was too heavy to
> protect Mr. Womack's speedy trial rights and because counsel failed to disclose
> or test possible exculpatory evidence. But a letter written by former counsel
> submitted in support of the personal restraint petition shows that Mr. Womack
> agreed to waive his speedy trial rights in connection with a motion for
> continuance. There is no indication that counsel was not adequately prepared. The
> letter further indicates that counsel deemed the so-called exculpatory evidence to
> have no exculpatory value. Mr. Womack's mere speculation about the
> exculpatory value of the evidence is insufficient to raise a factual issue as to
> whether counsel should have tested or disclosed it.
>
> As for standby counsel, Mr. Womack fails to present any reasoned argument
> questioning counsel's performance in that limited role. *See State v. Johnson,* 119
> Wn.2d 167, 171, 829 P.2d 1082 (1992) (passing unsupported arguments unworthy
> of judicial review).

Exhibit 17, p. 4.

   Womack has not shown that the state court's adjudication of his ineffective assistance of
counsel claim at the first prong was contrary to or an unreasonable application of clearly
established federal law. *See Yarborough*, 540 U.S. at 5. Nor does he show prejudice from the
alleged deficiencies that would satisfy the second prong. *See id.*

   Womack asserts that his trial counsel was constitutionally ineffective because he "had too
large of a caseload to adequately perform his duties." Dkt. 5, p. 83. Specifically, Womack asserts
that his trial counsel failed to ensure that he received a speedy trial and failed to obtain a DNA
test that Womack argued would be exculpatory. *Id.*

REPORT AND RECOMMENDATION - 26

1         Womack has not shown how the Washington Supreme Court's decision rejecting these

2 arguments was unreasonable. The record contains a letter from the attorney who represented

3 Womack before Womack decided to represent himself. Dkt. 5, pp. 217-18. Counsel wrote to

4 Womack recounting their conversations and his strategy in delaying both requesting a

5 continuance and requesting a DNA test of the physical evidence that Womack had given him.

6 Counsel explained that the two decisions were "closely related." He recounted that he and

7 Womack had discussed "over a period of months" how and whether to use the purported

8 evidence, and he indicated that he had doubts about whether the evidence would actually help

9 Womack's defense, or hurt it. He also explained his thinking in seeking a continuance in March

10 2011 and recalled to Womack that Womack had waived his speedy trial right in that instance. He

11 further explained that he sought a continuance in July 2011, that time over Womack's objection,

12 "based [on] new computer evidence that took a long time for the state to process." Dkt. 5, p. 218.

13         In considering counsel's letter and Womack's arguments in his PRP, the state Supreme

14 Court found "no indication that counsel was not adequately prepared." Exhibit 17, p. 4. It also

15 found that Womack's argument that DNA testing would have yielded exculpatory evidence to be

16 "mere speculation" and "insufficient to raise a factual issue." *Id.*

17         Courts look deferentially at whether counsel's performance "falls within the wide range

18 of reasonable professional assistance." *Strickland*, 466 U.S. at 689. And this Court is "doubly

19 deferential" in reviewing whether a state court decided that question reasonably. *Yarborough*,

20 540 U.S. at 5. Womack has not shown that the Supreme Court's determination on his claim that

21 trial counsel was ineffective were contrary to or unreasonable applications of clearly established

22 federal law.

REPORT AND RECOMMENDATION - 27

Womack also fails to show any prejudice from the alleged deficiencies of counsel. He asserts that he "was given a Hobson's choice in choosing between a speedy trial and adequate representation and the right to present exculpatory DNA evidence." Dkt. 5, p. 83. These assertions of prejudice are entirely speculative, and Womack fails to show "that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696.

B.    Appellate Counsel

Womack also contends that his counsel on direct appeal was constitutionally deficient.

The Washington Supreme Court rejected Womack's argument that his appellate counsel was ineffective:

> Mr. Womack faults appellate counsel for not raising nearly 40 grounds for relief Mr. Womack eventually raised in his pro se statement of additional grounds for review on direct appeal. Mr. Womack fails to show that counsel would have had any better results had they been argued in counsel's opening brief. The Court of Appeals reviewed Mr. Womack's pro se arguments and found them to be waived, unreviewable, or meritless. Mr. Womack relatedly claims appellate counsel was ineffective in failing to advance his pro se arguments in his petition for review in this court. But Mr. Womack fails to show that this court would have found any of his pro se arguments reviewable under RAP 13.4(b). Mr. Womack thus fails to demonstrate that appellate counsel's performance was deficient or that he was prejudiced by any potential deficiencies.

Exhibit 17, pp. 4-5.

Womack asserts that appellate counsel was deficient "because he failed to present a true representation of the facts" and did not brief Womack's SAGR claims in the Supreme Court. Dkt. 5, p. 84. But Womack had the opportunity to raise those claims, and he did so. Both the Court of Appeals and state Supreme Court were able to consider those claims despite appellate counsel's failure to raise them. The "process of 'winnowing out weaker arguments on appeal and

REPORT AND RECOMMENDATION - 28

focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Moreover, the Court of Appeals rejected each of the claims; therefore, Womack cannot show that he was prejudiced by appellate counsel's failure to raise the claims. And he cannot show that the Supreme Court's finding to the contrary was unreasonable.

Accordingly, Womack's habeas petition should be denied with respect to his ineffective assistance of counsel claims.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief may appeal a district court's dismissal of his § 2254 motion only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). Womack is not entitled to a COA because he has not shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Womack should address whether a COA should be issued in his written objections, if any, to this Report and Recommendation.

## CONCLUSION

Based on the foregoing, the Court recommends that Womack's habeas petition be DENIED and his claims dismissed with prejudice.

REPORT AND RECOMMENDATION - 29

1         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2   fourteen (14) days from service of this Report and Recommendation to file written objections.

3   See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

4   purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed

5   by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 22, 2019**, as

6   noted in the caption.

7         Dated this 1st day of February, 2019.

8

9

10

11

12   Theresa L. Fricke
     United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 30